***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Phillips, along with the briefs and arguments on appeal. The Full Commission MODIFIES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. As of November 1, 2002, an employer-employee relationship existed between the Plaintiff-Employee and the Defendant-Employer.
3. As of November 1, 2002, the Insurance Company of the State of Pennsylvania c/o AIG Claims Services was the Carrier on the Risk.
4. Plaintiff's workers' compensation rate of pay is $265.60.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 36 years old. Plaintiff has a high school diploma and has taken a couple courses in machine shop. Previously during the course of his work life, plaintiff worked as a forklift operator, machine operator, at K-Mart in the deli/food service, managed at a McDonald's restaurant, and worked at a Mr. Butler's Pizza. Plaintiff began working for defendant in 1999 as a co-manager. Sometime later he was promoted to Assistant Unit Manager and Unit Manager.
2. On 1 November 2002, plaintiff stepped over a hose in the front of the store and tripped, slipped, and began falling but caught himself as he came to his knees. Plaintiff felt pain in his back. Plaintiff reported the incident immediately to Jerry Brewer who was on site at the time.
3. Plaintiff continued to work that day. Also, the day after the incident plaintiff returned to work for his scheduled shift. Plaintiff began having pain in his back and legs and went to Primecare on 3 November 2002. The Primecare physician treated plaintiff conservatively and released plaintiff to return to work at a sedentary capacity beginning on 4 November 2002.
4. Plaintiff called the Primecare offices on 6 November 2002 cursing and demanding a note to be taken out of work completely. Primecare initially appeased plaintiff and provided the note, but subsequently rescinded the note when it was learned that plaintiff had not been forthcoming regarding defendant-employer's willingness to accommodate plaintiff's restrictions.
5. Upon receipt of the plaintiff's initial medical records from Primecare, defendant-employer's district manager Jerry Brewer contacted plaintiff and offered him a position within plaintiff's restrictions. Furthermore, defendant-employer's human resources department spoke with plaintiff on 4 November 2004 and advised plaintiff that defendant-employer would accommodate his restrictions and that Mr. Brewer would be getting in touch with plaintiff with a schedule. Plaintiff refused to attempt this position and subsequently failed to seek employment.
6. Plaintiff then sought treatment from Dr. Morgan, the plaintiff's family physician. The plaintiff misinformed Dr. Morgan, mischaracterizing the incident of 1 November 2002.
7. Plaintiff next obtained treatment from Dr. Christopher Bayshore, an orthopedic specialist, on 2 December 2002. Dr. Bayshore recommended physical therapy and released plaintiff to return to light duty work. Plaintiff failed to return to work for defendant or seek employment elsewhere.
8. On 10 December 2002 plaintiff went to Dr. Brown for treatment. After more conservative treatment, Dr. Brown released plaintiff to return to work with restrictions as of 24 February 2003. Again, plaintiff did not return to work for defendants or seek employment elsewhere.
9. Dr. Brown testified that he would rate plaintiff with a 10% permanent partial disability to his back.
10. Plaintiff collected short-term disability benefits of $650 per week for 3 three weeks and $390 per week for twenty-three weeks through May 2003 pursuant to defendant's fully funded short-term disability plan.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 1 November 2002 plaintiff suffered a compensable injury by accident when plaintiff stepped over a hose and tripped, slipped, and began falling but caught himself as he came to his knees. N.C. Gen. Stat. § 97-6(2).
2. As a result of the compensable injury, plaintiff was temporarily totally disabled and entitled to receive temporary total disability compensation at the rate of $256.60 per week from 4 November 2002 through 24 February 2003. N.C. Gen. Stat. § 97-29.
3. Defendants are entitled to a credit for payments made to plaintiff pursuant to the fully employer-funded short-term disability plan. N.C. Gen. Stat. § 97-42.
4. Plaintiff was offered sedentary employment at his preinjury wage by defendant but refused to attempt this employment and has not made reasonable efforts to find suitable employment since being released to return to work on 24 February 2003. Plaintiff is therefore not entitled to ongoing weekly disability benefits. N.C. Gen. Stat. § 97-32.
5. Plaintiff is entitled to compensation at a rate of $256.60 per week for 30 weeks for the 10% permanent partial disability plaintiff sustained to his back as a result of this injury by accident. N.C. Gen. Stat. §97-31(23).
6. Plaintiff is entitled to have the defendants provide all medical treatment for the injury sustained by plaintiff as a result of the 1 November 2002 compensable injury by accident to the extent that the treatment tends or tended to effect a cure, give relief, or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Subject to the credit owed defendants pursuant to N.C. Gen. Stat. §97-42, defendants shall pay plaintiff temporary total disability compensation at the rate of $256.60 per week from 4 November 2002 through 24 February 2003. N.C. Gen. Stat. § 97-29.
2. Subject to the credit owed defendants pursuant to N.C. Gen. Stat. §97-42, defendants shall pay plaintiff compensation at a rate of $256.60 per week for 30 weeks for the 10% permanent partial disability plaintiff sustained to his back as a result of this injury by accident.
3. Plaintiff is entitled to have the defendants provide all medical treatment for the injury sustained by plaintiff as a result of the 1 November 2002 compensable injury by accident to the extent that the treatment tends or tended to effect a cure, give relief, or lessen plaintiff's disability.
4. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due plaintiff under this AWARD shall be deducted from that sum and paid to plaintiff's counsel.
5. Defendant shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER